Smith, J.
This is a personal injury action[1] in which the plaintiff (“Ms. McSweeney”) seeks to recover damages for personal injuries as a result of her tripping while walking in the parking garage of defendant Sears Development Company, formerly known as Homart Development Company (“Sears” or “Homart”). Also named as defendants are the general contractor, R.W. Granger & Sons, Inc. (“Granger”) and two subcontractors, Northeast Concrete Products (“Northeast”) and Harry S. Peterson (“Peterson”). Defendant Granger subsequently filed a third-party complaint against co-defendant Northeast. Granger now moves for summary judgment against third-party defendant, Northeast, pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, Granger’s motion is ALLOWED in part and DENIED in part.
FACTS
The summary judgment record and affidavits, viewed in the light most favorable to Northeast and Ms. McSweeney, the non-moving parties, reveal the following undisputed facts.
Homart, the developer of the Natick Mall, retained the defendant Granger as the design build contractor for all of the parking garages located around the Natick Mall. On January 15, 1993, Granger subcontracted with Third-Party defendant Northeast to manufacture/fabricate the parking garage. The subcontract agreement (“Agreement”) contained an indemnity clause pursuant to G.L.c. 149, §29C.
Northeast subcontracted with defendant Concrete Structures, Inc. (“Concrete Structures”) to erect the garage. Concrete Structures hired two subcontractors, Hallamore Corporation (“Hallamore”) and Alger Construction (“Alger”) in order to erect the pieces of the garage together. It took Concrete Structures approximately one year to erect the garages for the mall.
In the Rider to the Agreement, also dated January 15, 1993, Granger stipulated that the sealant work for the parking garage construction must meet certain conditions. The Agreement indicated that the parties agreed that the sealant would be of a type manufactured by Harry S. Peterson Company (“Peterson”). Northeast complied with Granger’s stipulation by sub-subcontracting with Peterson to do the caulking work. Upon completion of the caulking, the parties to the construction contracts had the garage examined and signed off from the project.
On December 19, 1994, plaintiff Edna McSweeney was walking from her car on the third level of the parking garage outside of the Sears Department Store at the Natick Mall. While walking from her car to the mall entrance, Ms. McSweeney alleges that she tripped and fell on an uneven portion of the parking surface.
Granger alleges that Northeast was its subcontractor responsible for the construction of the part of the parking garage responsible for Edna’s fall. Granger claims that it is entitled to summary judgment against Defendant Northeast because it has a right to indemnification from Northeast, pursuant to Clause 5.2 in Granger’s subcontract agreement with Northeast. Second, Granger argues that even if it owed a duty of care to the plaintiff, Northeast has a duty to defend Granger under the indemnity clause. Northeast claims that the indemnification clause is void as a matter of law because it violates G.L.c. 149, §29C and that any grant of summary judgment on the duty to defend issue is premature because disputes of material fact exist as to the cause of the fall and liability. For the reasons stated below, the Court finds that the indemnification provision in the Agreement with Northeast is valid and *218 in compliance with G.L.c. 149, §129C but that material questions of fact exist as to the underlying liability for the alleged tort. Consequently, Granger’s motion for summary judgment is Denied in part and Allowed in part.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case, or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a.triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra. 404 Mass, at 17. “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner 405 Mass. 207, 209 (1989).
Granger argues that summary judgment is appropriate as to Northeast’s duty to indemnity and duty to defend Granger in Edna’s cause of action against Granger and others. The claims are considered in that order.
A. Validity of Article 5, §5.2, the Indemnification Clause
Granger argues that its indemnity provision in the Agreement is valid under G.L.c. 149, §29C. General Laws Chapter 149, §29C provides in pertinent part: “Any provision for or in connection with a contract for construction . . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or sub-contractors, shall be void.” A right to indemnification based in contract will be upheld when a valid contract sets forth language of indemnification express or implied. Kelly v. Dimeo, Inc., 31 Mass.App.Ct. 626, 628 (1991). Section 29C voids contractual indemnity provisions that require indemnification for injuries not caused by the subcontractor. Herson v. New Boston Garden Corp., 40 Mass.App.Ct. 779, 788 (1996). Chapter 149, §29C does not prohibit contractual indemnity agreements where the subcontractor agrees to assume indemnity obligations for the entire liability when both the subcontractor and the general contractor are causally negligent. See Id.; Callahan v. A.J. Welch Equip. Corp., 36 Mass.App.Ct. 608, 611-13 (1994); and Harnois v. Quannapowitt Dev., Inc., 35 Mass.App.Ct. 286, 288 (1993). In determining the validity of an indemnity provision under §29C, it is upon “the language of the indemnity clause that [the court] must focus rather than upon a finding of the facts of the particular accident and an assessment of fault of the parties." Harnois, supra at 288.
The contract between Granger and Northeast contains a clear indemnification clause, Article 5, §5.2 of the Agreement, which states in pertinent part:
To the fullest extent permitted by law, the Trade Contractor (Northeast) agrees to indemnify and hold harmless, the Contractor (Granger), the Owner, the Architect /Engineer, and all of their agents and employees from and against any and all claims, damages, costs, liabilities, judgments, negligence, losses and expenses, including but not limited to attorneys fees arising out of or resulting from the performance or failure of performance of the Trade Contractor’s work under this agreement.-
Article 5, §5.2 does not require Northeast to indemnify Granger for any and all injuries that Granger might cause, nor does this provision expressly require Northeast to assume indemnity obligations for entire liability when both Northeast and Granger are jointly causally negligent.
This Court finds that the Agreement between Granger and Northeast does not contain provisions that require Northeast to indemnify Granger for any injury that was not caused by Northeast. The agreement requires Northeast to “indemnify and hold harmless, the Contractor (Granger). . . from and against any and all claims, . . . costs, judgments, . . . and expenses, including but not limited to attorneys fees arising out of or resulting from the performance or failure of performance of [Northeast’s] work under the agreement." (Emphasis added.) Under the unambiguous language of Article 5, §5.2 of the Agreement, Northeast agreed to indemnify and hold Granger harmless only from and against any and all claims arising out of the work done by Northeast. This language falls well within the requirements of G.L.c. 149, §29C. Thus the Court shall grant summary judgment in favor of Granger on the sole issue of the validity of the indemnification clause in the Agreement.
B. Duty to Indemnify
Whether Northeast must in fact indemnify Granger is a question that cannot be decided at the summary judgment level because questions of material fact exist regarding causation and liability in the underlying tort claim. The disputed material factual questions include at least the following: where did the plaintiff trip; whether she tripped on a defect on the garage surface *219 for which either Granger or its subcontractors or Northeast or its subcontractors was responsible; for whom did Peterson work as subcontractor. Consequently, the Court shall deny Granger's motion for summary judgment to the extent that Granger seeks a judgment at this pre-trial stage of the case that Northeast is bound to indemnify it.
C. Duty to Defend
Finally, Granger argues that even if Granger “owed a duty of care, summary judgment should be granted because Granger is not obligated to share equally with Northeast in any settlement costs or legal expenses involved with the claim.” Relying upon Boston Symphony Orchestra, Inc. v. Commercial Union Ins., Co., 406 Mass. 7, 10-11 (1989), Granger argues that the indemnification clause imposes upon Northeast the duty to defend.[2]
Northeast correctly argues that a contractual agreement to indemnify which includes a hold harmless provision and the payment of expenses, including legal fees, still does not impose an independent duty to defend. Miley v. Johnson & Johnson Ortho., Inc., 41 Mass.App.Ct. 30, 32-34 (1996) (no indemnify obligation applied when plaintiff fell on a natural accumulation of snow for which no defendant was liable). If the cause of loss is unknown or not the responsibility of a subcontractor, there is no duty to indemnify, regardless of whether the indemnitee seeks to recover payments made to a claimant or the recovery of legal fees. Id.
In the present case, there is no express duty assumed by Northeast to defend Granger, and there is no obligation to indemnify if the cause of the plaintiffs injuries was an act or omission by persons other than Northeast, its agents, employees or subcontractors. While Granger’s motion for summary judgment as to the validity of the indemnification clause is not premature, however, because there exists a material factual question as to who may be responsible for the plaintiffs fall, Granger’s motion for summary judgment on the issue of Northeast’s alleged duty to defend is premature and is hereby Denied.
ORDER
1. The Motion for Summary Judgment of Defen - dant/Third-Party Plaintiff R.W. Granger & Sons, Inc. as to the validity of its indemnity provision with Northeast found in Article 5, §5.2 of the Agreement is ALLOWED. The Court hereby ORDERS that Article 5, §5.2 of the Agreement is in full compliance with G.L.c. 149, §29C.
2. The Motion for Summary Judgment of Defendant/Third-Party Plaintiff R.W. Granger & Sons, Inc. is otherwise DENIED as to all remaining issues raised in the motion.

 Edna McSweeney’s suit against all the defendants will hereinafter be referred to as the “Underlying Suit.”

 Granger attempts to use Boston Symphony Orchestra, Inc. v. Commercial Union Ins., Co., 406 Mass. 7, 10-11 (1989). to support the following statement: “Insurance protection is purchased to obtain the insurer’s twofold obligation to indemnify the insured against judgments for which liability' is covered under the policy and to defend the insured against claims alleging such liability."